William R. GOOLEY

v.

MOBIL OIL CORPORATION.

Civ. A. No. 87–0150–Z.

United States District Court, D. Massachusetts.

Nov. 4, 1987.

Daniel J. Lyne, Gaston Snow & Ely Bartlett, Boston, Mass., for plaintiff.

Joanne Amsterdamska, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, William Gooley ("Gooley"), leased a gasoline service station in Norwood, Massachusetts ("the property"), for thirteen years from defendant, Mobil Oil Corporation ("Mobil"), owner of the property. At the expiration of the last three-year lease agreement, in August of 1985, Gooley accepted Mobil's offer to sell the property and paid a deposit on the purchase price. Subsequent to the agreement (hereinafter "the offer agreement"), Gooley was unable to obtain financing for the purchase within the requisite period. He requested and obtained return of the deposit paid. In October 1986, Mobil notified Gooley that it had accepted an offer to purchase the property from a third party, subject to Gooley's right of first refusal. In plaintiff's Second Amended Complaint, he seeks an injunction barring Mobil from selling the property to anyone besides plaintiff and an order both that the property be transferred to Gooley at the price agreed to in August 1985 and that Mobil acquire certification that the property is pollutant free. Plaintiff also seeks punitive damages, attorney's fees and costs.

Plaintiff's arguments are contained in three counts. The first alleges breach of contract based on the offer agreement. The second alleges that defendant failed to provide a "bona fide offer" as required by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802(b)(3)(D)(iii) (1982). The third alleges unfair trade practices prohibited under Mass.Gen.L. ch. 93A, §§ 2, 11 (1986). Defendant now moves to dismiss the Second Amended Complaint on all three counts, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons stated below, defendant's motion is granted as to all three counts.

The facts as pleaded by plaintiff are as follows: On or about August 19, 1985, Mobil offered to sell the property for a purchase price of $202,500. On October 17, 1985, Gooley accepted the terms of the offer agreement and tendered a deposit check in the amount of $20,293. The offer agreement included a provision that prior to closing Mobil would test underground storage tanks and piping for leakage and, if necessary, would remove leaking tanks, reducing the purchase price accordingly, or replace leaking tanks with new ones, raising the purchase price proportionately. The offer agreement also placed conditions on plaintiff's acceptance. Purchase had to be completed within sixty days of plaintiff's notification to defendant that he accepted the offer. Failure to do so would entail forfeiture of the deposit which had to be remitted with plaintiff's notification of acceptance. Plaintiff was given forty-five days from acceptance to procure financing, failing which plaintiff would be entitled to proceed on cash terms or cancel the offer agreement. Plaintiff failed to arrange financing before the expiration of the forty-five day period because he was unable to obtain certification that the property was free of hazardous material. The Massachusetts Oil and Hazardous Material Release Prevention Act imposes liability on the owner or operator of a site from which there has been a release of oil or other pollutants. Mass.Gen.L. ch. 21E, §§ 5, 11 (1986). Because of the potential liability Gooley would assume as owner, financiers were uncooperative. The question of pollutants arose because Gooley was provided with a research report by an abutting property owner in November 1985, indicating possible environmental contamination caused by the underground tanks located on the property. On November 20, 1985, plaintiff notified Mobil of the substance of this report asking defendant to conduct an environmental investigation, clean up the

property and extend the financing contingency date pending Department of Environmental Quality Engineering ("DEQE") certification that the property was pollutant free. Mobil did not respond to plaintiff's letter. With the sixty-day limit drawing to a close, plaintiff asked Mobil to refund his deposit, stating that he reserved his rights to purchase the property for $202,500 at a later date. Mobil refunded the deposit to Gooley.

Thereafter, Mobil conducted environmental tests of the property in concert with the DEQE. Mobil removed its underground tanks and pumps from the property and cleaned the property. By October 15, 1986, Mobil had completed its clean-up, mailing a letter to plaintiff so informing him. The letter also contained a copy of the third-party offer dated June 26, 1986, for $375,-000. Mobil granted Gooley a right of first refusal if he could match the third-party offer.

■ Plaintiff argues under Count One that Mobil's contractual obligation to test for and remove leaking storage tanks implied an obligation to clean the property of all contaminants before the forty-five day financing deadline had passed. The clear language of the offer agreement indicates that this claim is unfounded for several reasons. First, while the offer agreement specified that Mobil was to test for leakage and remove defective tanks, there is no language obligating Mobil to clear the rest of the property of environmental contaminants. Second, under the offer agreement, Mobil had to test the storage tanks for leakage at any time before closing, whereas plaintiff had to obtain financing within forty-five days from the date of acceptance of the offer agreement. The offer agreement clearly specified plaintiff's options should he fail to procure financing. He could either proceed on all cash terms or cancel the contract and obtain a refund of his deposit. Plaintiff chose the latter option requesting a refund of his deposit, thereby waiving his contractual rights.

*See Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980), where the court held that "[i]f [a party] intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." *See also Gutor International AG v. Raymond Packer Co.,* 493 F.2d 938, 944 (1st Cir.1974). Finally, if plaintiff viewed the contamination of the property as a title defect, paragraph 13 of the offer agreement stipulated unequivocally that defendant had the right to disapprove the condition of Mobil's title, to notify Mobil thereof, and if Mobil failed to cure title defects before the date of title closing, plaintiff could cancel and receive a refund of the deposit paid. Gooley exercised his option of cancelling the contract and his deposit was refunded.

■ Plaintiff's claim under Count Two that the offer agreement did not constitute a "bona fide offer" as required by the PMPA, 15 U.S.C. § 2802(b)(3)(D)(iii),[1] is also without merit. Plaintiff argues that the offer was not bona fide because the property was in a nonsaleable condition due to site contamination and that he was foreclosed from purchasing the property because such contamination prevented him from obtaining financing. To be bona fide, an offer must be issued in conformance with the offeror's general practice for selling property and the purchase price must "meet or very nearly approach" the fair market value of the fully operative leased station. *Tobias v. Shell Oil Co.,* 782 F.2d 1172, 1174 (4th Cir.1986). *See also Slatky v. Amoco Oil Co.,* 830 F.2d 476, 483–84 (3d Cir.1987); *Brownstein v. Arco Petroleum Products Co.,* 604 F.Supp. 312, 315 (E.D. Pa.1985). Plaintiff does not contend that Mobil's offer was not in conformity with Mobil's general business practice or that it was above market value. In fact, the offer

---

**1.** Sec. 2802(b)(3)(D)(iii) provides in part that the franchisor must make either "a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or ...

[offer] the franchisee a right of first refusal of at least 45–days duration of an offer, made by another, to purchase such franchisor's interest in such premises."

agreement was completed on the preprinted form used by Mobil in selling property. There is no allegation that Mobil did not formulate its offer through regular corporate channels or that the offer was not in conformity with corporate policies.

The PMPA was enacted to protect gasoline franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises, *Esso Standard Oil Co. v. Dept. of Consumer Affairs*, 793 F.2d 431, 432 (1st Cir.1986), but that does not oblige franchisors to give franchisees special treatment. *See, e.g., Ballis v. Mobil Oil Corp.*, 622 F.Supp. 473, 475 (D.C.Ill.1985) (franchisor was not required to give franchisee any price discount). Franchisors are obliged to give franchisees a reasonable opportunity to continue operation of a service station, but are not required to engage in a potentially costly clean-up operation without an opportunity to recoup the investment in such operation at a later date.

Plaintiff intimates that the offer agreement was not bona fide because Mobil knew of the possibility of contamination. In fact, paragraph 3 in the offer agreement indicates that both sides were aware of the possibility of ground contamination and had made provisions for such contingency. It obligates Mobil to test for oil leakage prior to closing, and requires it to remove leaking tanks if necessary. Plaintiff argues that the omission of a term requiring Mobil to correct environmental pollution before the forty-five day period expired was not bona fide because the offer agreement was the result of a disparity of bargaining power between franchisor and franchisee, allowing the franchisor undue leverage. Plaintiff relies on *Roberts v. Amoco Oil Co.*, 740 F.2d 602, 605 (8th Cir.1984). In that case, the court found that the franchisor had not made a bona fide offer where the offer agreement excluded gasoline pumps, storage tanks and dispensers, items integral to the franchisor's "interests in such premises" under § 2082(b)(3)(D)(iii). This case reflects no such statutory violation and there are no facts pleaded by plaintiff which support the allegation that the offer agreement was made pursuant to unequal bargaining power.

Given that Mobil did not breach the offer agreement and did not violate the PMPA, there is no basis for plaintiff to allege deceptive trade practices prohibited by Mass.Gen.L. ch. 93A (1986). I therefore do not need to consider whether Gooley's claims under ch. 93A are preempted by the PMPA.

Defendant's motion to dismiss the complaint as to all three counts is granted. Judgment shall be entered accordingly.